**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heather Lynn Stein, | No. CV-22-00141-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Heather Lynn Stein's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 17), Defendant Social Security Administration Commissioner's Response Brief (Doc. 20), and Plaintiff's Reply Brief (Doc. 21). The Court has reviewed the briefs, Administrative Record (Doc. 14, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 13-29) and affirms the ALJ's decision for the reasons addressed herein.

**I.      BACKGROUND**

Plaintiff filed an application for DIB on January 20, 2020, alleging disability beginning on October 30, 2018. During her hearing, Plaintiff later amended her disability onset date to December 18, 2018. (R. at 13). Plaintiff's claims were denied initially on March 23, 2020, and upon reconsideration on May 29, 2020. (*Id.*) On March 25, 2021, Plaintiff testified before an ALJ in a telephone hearing regarding her claims. (*Id.*) On

April 28, 2021, the ALJ denied her claims. (R. at 13-29). On November 26, 2021, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-5). On January 25, 2022, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of bilateral hip bursitis, inflammatory arthritis, fibromyalgia, and bipolar affective disorder. (R. at 16).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 29). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 17). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)" with certain function limitations and concluded that Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 20, 29).

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more

than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) whether Plaintiff's symptom testimony was erroneously rejected, and (2) whether the ALJ properly considered the assessment of treating nurse practitioner, Heidi Pence, PsyNP. (Doc. 17 at 1). Plaintiff requests this Court to remand the case for an award of benefits. (Doc. 17 at 25).

**A.     The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons supported by *substantial* evidence to reject Plaintiff's symptom testimony. (Doc. 17 at 13-20.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040).

- 4 -

The ALJ's decision accounted for Plaintiff's impairments encompassing bilateral hip bursitis, inflammatory arthritis, fibromyalgia, and bipolar affective disorder. (R. at 16). Plaintiff testified that she has been unable to work because of severe depression, anxiety, and panic attacks, along with physical issues that include pain with her hip, hands, and feet. (R. at 50). Plaintiff asserted that she can only walk for five to ten minutes at a slow pace and would occasionally have to take a break. (R. at 50-51). Plaintiff stated that she experienced constant aching pain with occasional sharpness in her hands and hips. (R. at 53). Plaintiff further stated that walking, sitting for too long, and standing for ten minutes "aggravates" her pain and she needs to lay down for two hours every day. (R. at 53-55). With regards to Plaintiff's mental limitations, she testified that her anxiety and panic attacks are triggered when having to be around people and she suffered from a panic attack once every four months that lasts for ten to fifteen minutes. (R. at 56-58). Plaintiff claimed that she cried every other day due to her depression and it caused her to experience brain fog, which affected her short-term memory. (R. at 58).

The ALJ considered the level of Plaintiff's medical issues and found that her "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (R. at 23). The ALJ then cited to specific examples in the record to support her findings. Plaintiff, however, argues that the ALJ failed to provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony. (Doc. 17 at 13-20). The Court does not agree with Plaintiff's arguments. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ also pointed to Plaintiff's conservative treatment as an additional reason for discrediting Plaintiff's symptom testimony. (R. at 22-24).

Plaintiff's first argument implies that the ALJ relied on the severity of the symptoms to reject her symptom testimony. (Doc. 17 at 14). Plaintiff's argument is misplaced. The ALJ did not require proof of the severity of Plaintiff's symptoms; however, the ALJ is also not required to believe every allegation of pain made by the Plaintiff. "The Court does not read the ALJ's 'not entirely consistent' statement . . . as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08202-PCT-JAT, 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021).

With regard to Plaintiff's mental impairments, the limited argument suggests that the ALJ failed to explain how normal examination findings in the record diminished Plaintiff's testimony of anxiety, concentration deficiency or mood cycling during severe depression. (Doc. 17 at 19). From the outset, the ALJ found that Plaintiff's alleged anxiety and depressive disorders were not impairments because "the record contains no medical evidence to substantiate these impairments resulted from psychological abnormalities, which were demonstrable by medically acceptable clinical and laboratory diagnostic techniques as described in the Act." (R. at 17). "Although [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Additionally, the ALJ's discussion cited to treatment notes that documented Plaintiff had logical and intact thought processes; normal mood and affect; clear speech, and an alert, calm and pleasant appearance. (R. at 19, 23, 418, 421-22, 426, 432, 436, 442, 446, 497, 502, 509-10, 519, 523, 550, 552, 556, 560, 675, 678, 685, 692, 743, 765, 804, 856, 878, 913-14, 918, 923, 928, 932). The ALJ's findings also deemed Plaintiff's bipolar disorder as severe and cited to instances in the record where Plaintiff experienced mood lability, sleep disturbances, anxiety, low energy, hopelessness, racing thoughts, and difficulty controlling her emotions. (R. at 23, 467, 470, 472-75, 756, 770, 888). However, the ALJ determined that the majority of the examination records demonstrated Plaintiff had intact thought content, processes,

and perceptions. (R. at 23, 464-76, 754-58, 885-88, 904-05). Clearly, the record exposes conflicting evidence between the Plaintiff's testimony and the treatment notes, but it is the ALJ's responsibility "'for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The Court finds the ALJ has met her burden in providing sufficient explanations to support her decision.

The ALJ's discussion regarding Plaintiff's physical impairments focused on her bilateral hip bursitis, inflammatory arthritis, and fibromyalgia. (R. at 22-23). The ALJ noted that physical examinations in the record revealed Plaintiff experienced tenderness to palpation over the trochanteric bursa and multiple fibromyalgia tender points. (R. at 23). Nevertheless, many treatment notes also contradicted this evidence and demonstrated that Plaintiff exhibited nonantalgic gait, intact ability to stand on her tiptoes/heels, no joint effusions, no erythema, no synovitis, normal range of motion to include her hands, intact strength, no edema, and normal coordination, reflexes and movement of all extremities. (R. at 23, 418, 421-22, 426, 432, 436, 442, 446, 497, 502, 509-10, 519, 523, 552, 556, 560, 675, 678, 685, 691-92, 742-43, 765, 803-04, 856, 878, 912-14, 918, 923, 928, 932). Plaintiff argues that the ALJ made no effort to connect the discussion of the medical evidence to a finding that any specific part of Plaintiff's testimony lacked credibility. (Doc. 17 at 14). The Court is not persuaded by Plaintiff's argument. The ALJ unmistakably set forth a summary of Plaintiff's testimony that illustrated her physical impairments. (R. at 22). The ALJ then discussed the objective medical evidence from the record and used specific evidence from the record to render her findings. (R. at 22-23). The Court finds the ALJ's reasoning is discernible and is clearly supported by the medical evidence. If an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (applying this standard to social security).

The medical record further indicates that despite claims of pain, Plaintiff exhibited normal range of motion to include the hands, normal coordination, normal reflexes, normal movement of extremities, and nonantalgic gait. (R. at 24, 418, 421-22, 426, 432, 436, 442, 446, 497, 502, 509-10, 519, 523, 552, 556, 560, 675, 678, 685, 691-92, 742-43, 765, 803-04, 856, 878, 912-14, 918, 923, 928, 932). The ALJ also noted that nothing in the record indicated that Plaintiff required an assistive device to ambulate, and Plaintiff experienced some benefits with her treatment regimen. (R. at 23-24). Plaintiff additionally argues that the ALJ did not explain how examinations with normal findings were inconsistent with Plaintiff's testimony regarding the effects of her pain and other symptoms on her inability to sustain full-time work. (Doc. 17 at 15). The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter*, 806 F.3d at 492. Plaintiff's arguments only seek to offer alternative interpretations of the evidence, which the Court does not support. *See Burch*, 400 F.3d at 679.

The ALJ also considered the conservative course of treatment as a factor in the non-disability determination. (R. at 40). This was a proper consideration by the ALJ. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that if a claimant has only received conservative treatment, this is a proper reason for the ALJ to discount his symptom testimony). Plaintiff contends that the injections and medical trials she underwent do not qualify as conservative medical treatment. (Doc. 17 at 18). However, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ noted that Plaintiff received bilateral hip injections and medication for treatment of her pain. (R. at 22-23, 413-63, 517-28, 550, 739-52, 802-67, 889-903, 906-33). Plaintiff reported experiencing a benefit from her treatment regimen. (R. at 23, 416, 422, 424, 426, 432, 546, 802, 804, 912, 916). Plaintiff pointed out that she received 30% to 50% and upwards of 70% improvement

1  with her medications and injections. (Doc. 17 at 16) (citing R. at 416, 741, 918, 926, 930).
2  Plaintiff argues that the medical evidence the ALJ cited to does not show Plaintiff was
3  provided with lasting relief to allow her to work or to invalidate her symptom testimony.
4  (Doc. 17 at 17). However, based upon the medical evidence, the record clearly shows that
5  Plaintiff exhibited vast improvement with her prescribed treatment plans and received
6  significant pain relief from her impairments. Plaintiff further argues that she experienced
7  issues with sedation between July 2019 and October 2019 stemming as a side effect from
8  her medication. (Doc. 17 at 17). Nevertheless, it appears to have been a limited matter as
9  the ALJ noted the Plaintiff denied problems with sedation at the remainder of her medical
10 appointments during the relevant period of her disability claim. (R. at 23, 414, 417, 421,
11 425, 431, 435, 441, 446, 742, 913, 917, 923, 927).

In consideration of Plaintiff's daily living activities, the ALJ analyzed the extent of Plaintiff's activity level against the functional limitations required to meet the listed impairments, specifically Listing 1.18, 12.04, 14.09 and SSR 12-2p. (R. at 17). The ALJ found Plaintiff did not meet any of the criteria and cited Plaintiff's daily activities as one example to reach this conclusion. Plaintiff's activity level included preparation of simple meals, use of a computer, performance of household chores that included laundry and washing dishes, the ability to drive without medical restrictions, the capability to go shopping, paying bills, and visiting with her family in-person (pre-Covid) and on video chat (during Covid). (R. at 18-20, 46, 51-52, 60). Although Plaintiff alleged pain during some of her activities, "[e]ven where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113.

Given the scope of the record, the ALJ properly relied upon the objective medical evidence to find Plaintiff's allegations were inconsistent with the record. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the

ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear, and convincing reasons to dismiss Plaintiff's claims and those reasons were supported by substantial evidence.

**B.     The ALJ properly considered the medical opinion evidence.**

Plaintiff argues that the ALJ erred in her assessment of psychiatric nurse practitioner, Heidi Pence, PsyNP, by failing to explain the supportability and consistency factors required to be supported by substantial evidence. (Doc. 17 at 1).

Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 10 -

doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. at 792.

In the present case, NP Pence submitted two separate check-box medical questionnaires in February 2020 and February 2021. (R. at 668-69, 934-35). NP Pence opined that Plaintiff experienced moderately-severe to severe impairments in various areas of functioning that affected her ability to work an eight-hour workday. (R. at 668-69, 934-35). NP Pence also noted that Plaintiff experienced moderately severe sedation as a side effect from her medication. (R. at 668-69, 934-35). The ALJ found NP Pence's opinions unpersuasive. (R. at 26). The check-box questionnaires lacked supporting explanations and documentation to support NP Pence's opinions. "We have held that the ALJ may 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina*, 674 F.3d at 1111-12 (citations omitted). The ALJ found NP Pence's opinion lacked supportability because treatment notes from NP Pence's own examinations of Plaintiff suggest other findings contrary to what was submitted in the forms. For instance, NP Pence documented sedation as a side effect from Plaintiff's medication, but the ALJ pointed out that NP Pence's treatment records consistently indicated that Plaintiff did not experience any side effects from her prescribed medications, aside from a few months in 2019. (R. at 26, 414, 417, 421, 425, 431, 435, 441, 446, 742, 913, 917, 923, 927). While Plaintiff again argues that sedation was not properly considered by the ALJ (Doc. 17 at 22), the record indicates that the ALJ did take this side effect into consideration and found it was not supported by the treatment records. (R. at 26). An ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See*

*Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ also found that the limitations proffered by NP Pence were not supported by her own mental status examinations, which found some abnormalities in the record, but overall, indicated Plaintiff displayed intact thought content, thought processes, and perceptions. (R. at 26, 464-76, 754-58, 885-88, 904-05).

Moreover, the ALJ found NP Pence's limitations were not consistent with Plaintiff's treatment course, which was routine and conservative. (R. at 26). The ALJ found NP Pence did not require Plaintiff to attend any inpatient psychiatric hospitalizations, intensive outpatient programs, or crisis interventions during her course of treatment. (R. at 24). The ALJ also found that NP Pence's limitations were not consistent with the examination findings in the record by Plaintiff's other medical providers. (R. at 26). Other providers' treatment notes indicated Plaintiff had "an alert/calm/pleasant appearance with normal mood, normal affect, normal behavior, logical/goal-directed thought processes, clear speech, and intact thought content." (R. at 26, 418, 421-22, 426, 432, 436, 442, 446, 497, 502, 509-10, 519, 523, 552, 556, 560, 675, 678, 685, 691-92, 742-43, 765, 803-04, 856, 878, 912-14, 918, 923, 928, 932). Again, Plaintiff argues the ALJ failed to "clearly explain" the supportability and consistency of NP Pence's assessed limitations submitted via the check-box forms. (Doc. 17 at 22-23). The ALJ met her burden of discussing the Listings limitations and the "paragraph B" criteria as required for mental impairments. (R. at 17-20). The regulations specifically state that, "it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record… We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). The regulations illustrate that an ALJ does not need to convey their consideration behind every limitation finding in a medical opinion.

Plaintiff's final argument again asserts that since NP Pence was a treating provider, the ALJ should have been more detailed in her analysis as to why nonexamining physician

opinions were more persuasive than a treating provider. (Doc. 17 at 23-24). However, as stated above, the new regulations no longer afford any deference to one treating source over another. The two most important factors for an ALJ to consider are consistency and supportability. The ALJ clearly discussed how persuasive she found each medical opinion and articulated sufficient reasons based upon the consistency and supportability factors to validate her nondisability finding. Ultimately, Plaintiff takes issue with the ALJ's interpretation of the evidence and asserts that her interpretation of the evidence is a better alternative. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The Court finds the ALJ provided substantial evidence to sufficiently support her decision.

## IV.  CONCLUSION

The Court finds that substantial evidence supports the Commissioner's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 11th day of July, 2023.

Honorable John J. Tuchi
United States District Judge